UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

PEGGY ANN SCHARMER,

    Plaintiff,

v.                                                                                      Hon. Sally J. Berens

COMMISSIONER OF SOCIAL SECURITY,         Case No. 1:18-cv-00872

    Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See*

*Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff filed an application for DIB on December 16, 2014, alleging that she had been disabled since June 6, 2012. (PageID.90.) Plaintiff was 47 years old at the time of the alleged onset date. (PageID.160.) Plaintiff's applications were denied (PageID.78-85), and she requested a hearing before an Administrative Law Judge (ALJ) (PageID.55-65).

2

ALJ Nicholas Ohanesian conducted a hearing on August 16, 2017, and on February 22, 2018, issued a written decision finding that, because Plaintiff had a sufficient residual functional capacity to perform jobs that existed in significant numbers in the national economy, she was not entitled to benefits. (PageID.35-48, 55-65.) Plaintiff filed a request for review by the Appeals Council. (PageID.24.) The Appeals Council denied Plaintiff's request for review on June 5, 2018. (PageID.24-30.) Thus, ALJ Ohanesian's February 22, 2018 ruling became the Commissioner's final decision. 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff initiated this civil action for judicial review on August 6, 2018.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a

---

[1]  1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4.  If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

3

nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

The ALJ determined that Plaintiff last met the insured status requirement of the Social Security Act on December 31, 2017, and had not engaged in substantial gainful activity during the period from her alleged onset date of June 6, 2012, through her date last insured of December 31, 2017. (ECF No. 6-2, PageID.37.) The ALJ found that she had the following severe impairments: Crohn's ileitis and colitis status post abscess and bowel obstruction, chronic diarrhea, gastroesophageal reflux disease, and anxiety. (*Id.*) He also noted that she also complained of osteoporosis and foot pain, but found that those impairments were not severe. (*Id.* at PageID.38.) The ALJ also found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.*)

Plaintiff alleged that her ability to work was "limited by her chronic diarrhea, dizziness, shakiness, and lack of stamina," as well as "her arthritis and difficulty with concentration and memory." (*Id.* at PageID.41.) She claimed to be limited to lifting five pounds, walking up to one

block, and concentrating for up to 15 minutes. (*Id.*) She also claimed that "she has difficulties with following written or spoken instructions and she does not do well with handling stress or changes in routine." (*Id.*) At the hearing, she stated that "she lost her prior job due to her bathroom breaks and currently she has eight bowel movements a day with each time lasting 30 to 45 minutes." (*Id.*) She also testified that "she brings extra clothes and baby wipes as precautions when she leaves the house." (*Id.*) She stated, "she has 'bad days' three days a week when her symptoms are worse." (*Id.*)

> The ALJ concluded:
>
> I concede the claimant's Crohn's disease has clearly imposed some limitation on her functioning. However, the record as a whole fails to corroborate the claimant's reported degree of limitation from the severe impairments. Although treatment notes indicate the claimant's impairment was not well controlled in the past, more recent records show her Crohn's symptoms are controlled and mild. Additionally, the records show the claimant has repeatedly been advised to stop smoking because [of] the effect of tobacco use on Crohn's disease. It is noted that the claimant has chronic diarrhea apart from the Crohn's disease, but treatment notes indicate the symptoms are reduced with the use of Imodium and other medications. While the need for frequent bathroom breaks is supported, the claimant's alleged duration of each break is not supported by the objective evidence. Lastly, the claimant's mental impairment of anxiety has been treated conservatively with counseling.

(ECF No. 6-2, PageID.41; *see also* PageID.46.) In making that determination, the ALJ reviewed the medical records and various opinions of medical providers at some length. (*Id.* at PageID.41-46.)

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff "had the residual functional capacity to perform less than the full range of light work," including to "receive, comprehend, and execute simple routine tasks with no fast paced work; have occasional contact with the public; and have access to restroom facilities as needed, but not to exceed 10 percent of the workday exclusive of breaks." (*Id.* at PageID.40.)

5

The ALJ found that Plaintiff was unable to perform her past relevant work (PageID.46-47); at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy that Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Servs.*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. And here the ALJ questioned a vocational expert.

The vocational expert reported that there existed over one million jobs nationally that an individual with Plaintiff's RFC could perform, such limitations notwithstanding. This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Notably, the vocational expert opined that, if Plaintiff would need to be off task more than 10 percent of the time, that would be "work preclusive." (PageID.85.)

However, the ALJ determined that the appropriate restriction to the Plaintiff's RFC would include access to restroom facilities as needed, but no more than "10 percent of the workday exclusive of breaks." (PageID.40.) Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

**Discussion**

Plaintiff raises three claims of error. (ECF No. 13 at PageID.2442.) First, she claims that pursuant to *Lucia v. Securities and Exchange Commission*, 138 S. Ct. 2044, 2055 (2018), the case must be remanded because the ALJ was not properly appointed. Second, she argues the ALJ committed reversible error by failing properly to credit the testimony of Plaintiff's treating physicians. Third, she argues that the ALJ committed reversible error in questioning Plaintiff's credibility due to her failure to quit smoking.

**1. ALJ Appointment**

Citing *Lucia*, 138 S. Ct. 2044 (2018), Plaintiff argues that the Court should remand this case to the Commissioner for hearing by a new and properly appointed ALJ. In *Lucia*, the Court held that ALJs for the Securities and Exchange Commission had to be appointed to their office in compliance with the Appointments Clause of the United States Constitution. 138 S. Ct. at 2049–55. Plaintiff admits she never raised this issue at the administrative level. (PageID.2485.)

In *Pugh v. Commissioner of Social Security*, No. 1:18-cv-78, 2018 WL 7572831 (W.D. Mich. Nov. 8, 2018), Magistrate Judge Carmody rejected an Appointments Clause argument made under the same circumstances present here—the plaintiff failed to raise it at the administrative level. Judge Carmody noted that the Court in *Lucia* held that *Lucia* was entitled to relief because he timely challenged the ALJ's appointment at the hearing on his case before the ALJ. *Id.* at *1 (citing *Lucia*, 138 S. Ct. at 2055). Judge Carmody found persuasive other lower federal court decisions applying *Lucia* to Social Security Administration ALJ appointments and concluding that such challenges had merit only if the plaintiff raised the issue at the administrative level. *Id.* (citing *Thurman v. Comm'r of Soc. Sec.*, 2018 WL 4300504, at *9 (N.D. Iowa Sept. 10, 2018); *Garrison v. Berryhill*, 2018 WL 4924554, at *2 (W.D.N.C. Oct. 10, 2018); and *Davidson v. Comm'r of Soc. Sec.*, 2018 WL 4680327, at *1 (M.D. Tenn. Sept. 28, 2018)). In addition, in *Smith v. Saul*, No.

1:17-cv-01236, 2019 WL 4131740 (W.D. Tenn. Aug. 28, 2019), the court observed that, with the exception of a single district court, all district courts within the Sixth Circuit that have considered the issue have concluded that, under *Lucia*, a claimant waives an ALJ appointment issue by failing to timely raise it before the Social Security Administration. *Id*. at *1.

The Court finds these decisions persuasive. Plaintiff offers no reason why this Court should not reach the same conclusion as the overwhelming majority of district courts in the Sixth Circuit. Social Security Ruling (SSR) 19-1p, 2019 WL 1324866, which Plaintiff cites, does not aid her cause: it states that "[w]e will apply this notice on March 15, 2019," *id*. at *1, nine months after the Appeals Council completed its review of Plaintiff's claim. Moreover, the ruling applies only if the claimant raises a timely challenge at the administrative level, *id*. at *3, which Plaintiff admits she did not do.

Although Plaintiff argues that she had no basis to challenge the ALJ's appointment because the Supreme Court did not decide *Lucia* until after the Appeals Council completed its review of Plaintiff's claim, "Plaintiff had access to the building blocks of an Appointment Clause challenge long before [*Lucia*] existed." *Fitzgerald v. Berryhill*, No. 1:17-CV-00144, 2019 WL 1125666, at *4 (W.D. Ky. Mar. 12, 2019). *Freytag v. Commissioner*, 501 U.S. 868 (1991), which provided the foundation of the Court's reasoning in *Lucia*, was decided in 1991. Plaintiff invokes *Jones Brothers v. Sec. of Labor*, 898 F.3d 669 (6th Cir. 2018), but in that case, the petitioner had raised the issue (albeit in cursory fashion) during the administrative proceeding. *Id.* at 677-78. The Sixth Circuit found that the plaintiff's reasonable uncertainty, coupled with its acknowledgment of the constitutional issue at the administrative level provided grounds for excusing the forfeiture. *Id.* at 678.

At least one court has held that the rationale underlying *Jones Brothers* does not provide grounds for excusing forfeiture in cases like this, where "Plaintiff failed to make an argument or even note a split of authority pertaining to the appointment of the ALJ at any point in the administrative procedure." *Page v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 902, 905 (E.D. Mich. 2018). This Court finds that reasoning persuasive.

**2. Weight for Treating Physicians' Opinions**

Next, Plaintiff argues that this Court should remand because the ALJ failed to weigh the evidence properly, resulting in a decision that substantial evidence does not support. In particular, she argues that the ALJ gave too little weight to the opinions of her treating physicians and specialists, Dr. Franklyn (primary care), Dr. Jaszewski (gastroenterologist), Dr. Stawiski (podiatrist), and Ms. Lawrence (psychotherapist). (PageID.2485-86.) Plaintiff concedes that Dr. Stawiski (who did not consider Plaintiff's gastrointestinal issues) found that she was capable of sedentary work. (PageID.2443.) But she notes that the others reported that she was "disabled to a degree far greater than the light exertional RFC determined by this ALJ." (PageID.2443.) Plaintiff also argues that the ALJ gave too much weight to a non-examining physician. (*Id.*)

Plaintiff's primary assignment of error is that the ALJ did not properly support his finding that Plaintiff could work at a light RFC as long as she was within easy reach of a bathroom and that she would only be off task 10 percent of a work day. (*Id.*) She also argues that the vocational expert testified that employers would only allow shorter bathroom breaks, and the non-examining physician never opined that her bathroom breaks would be so limited. (PageID.2444.)

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must,

9

therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). That deference is appropriate, however, only where the opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

Notably, a treating physician's opinion on the ultimate issue, whether a claimant is disabled, need not be given any weight because that determination of the ultimate issue is reserved for the Commissioner. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009); *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 979, 980 n.1 (6th Cir. 2011). Therefore, Plaintiff's argument that her treating physicians opined as to her degree of disability is misplaced. The Court must, however, consider whether the ALJ properly discounted other opinions as to Plaintiff's RFC.

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must give "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Those reasons must be "supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (citation omitted). Simply stating that the physician's opinions "are not well-supported by any objective findings and are

10

inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight it should be afforded. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to her assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

Plaintiff argues that the ALJ failed to consider the factors he was required to assess in rejecting the treating physicians' opinions. (PageID.2445.) However, the ALJ carefully discussed each opinion and explained why he was assigning a particular weight, carefully noting where the opinions were unsupported (or contradicted) by the objective medical evidence. (PageID.43-46.)[2] Plaintiff does not meaningfully grapple with the ALJ's analysis of each treating physician's opinion. Nor does she explain why the ALJ should not have relied upon the evidence that contradicts the treating physicians' opinions. (PageID.2443-46.) Plaintiff's argument is entirely conclusory. She simply re-states the treating physician's opinion regarding the ultimate question

---

[2] Plaintiff argues that the ALJ should not have given "great weight to the non-examining physician" (PageID.2443), but the ALJ further refined Plaintiff's RFC from that opined by the State agency consultant, who opined that Plaintiff only needed easy access to restroom facilities. The ALJ determined that Plaintiff required restroom access as needed, but could be off task up to 10 percent of the day. (PageID.43.)

11

of disability and pronounces it sufficient without explaining why the evidence the ALJ identified does not contradict the opinion. (*See, e.g.*, PageID.2486.)

Plaintiff's argument, at base, is that there was not substantial evidence to support the ALJ's determination that Plaintiff would not be off work more than 10 percent of the time. (PageID.2443.) In particular, Plaintiff argues that the ALJ should not have discounted her testimony that she sometimes had to use the bathroom multiple times a day for sustained periods and that she "left her job, sold her snowmobile, no longer attended movies, still experienced accidents frequently, and traveled with a change of clothes and wipes." (PageID.2443-44.) She further claims that there is insufficient evidence in the record to support the assertion that the breaks Dr. Jaszewski said Plaintiff would need would only be short breaks. (PageID.2444.)

The difficulty for Plaintiff's argument is that it is her burden to demonstrate the extent of her disability. She claims to have done so through the submission of her treating physicians' statements and her own testimony that she spends much of the day in the bathroom. But the ALJ carefully catalogued the improvement of Plaintiff's symptoms over time. (PageID.44) For example, in March 2017, Plaintiff reported to her gastroenterologist that taking Imodium reduced her symptoms to three to four stools per day. (PageID.44.) A colonoscopy in December 2016 revealed only mild ileitis. (PageID.2386.) And subsequent pathology revealed no disease at all in the colon or terminal ileum. (*Id.*) Dr. Vladimir Ferrer, an examining physician, noted in March 2017 that Plaintiff was "doing fairly well from a lower gastrointestinal standpoint with full endoscopic remission based on negative terminal ileum and colonic biopsies." (PageID.2387.) He noted that she had some residual lower gastrointestinal symptoms but that taking Imodium reduces her to having three to four stools per day. (PageID.2386-87.) That serves as substantial evidence

for the ALJ to determine that Plaintiff would not be off task for bathroom breaks more than 10 percent of the day. (PageID.44.)

Plaintiff argues that "RFC is defined as what a plaintiff can do on a sustained, regular basis, and when the ALJ failed to consider the net effect of Plaintiff's impairments," that was error. (PageID.2445.) Plaintiff further contends: that Plaintiff "had some normal objective findings at times does not carry the day," and that the record demonstrated that Plaintiff had such regular bathroom requirements that she could not maintain steady employment. (PageID.2445-46.) However, while there is evidence that Plaintiff had some flares of disease, including abscesses, partial bowel obstruction, and a surgical revision to drain a psoas abscess and undergo an ileocolic resection in 2014, there was substantial evidence to support the ALJ's determination that her Crohn's disease was "quiescent" by June 2015 (PageID.2078), and she "was doing fairly well from a lower gastrointestinal standpoint with full endoscopic remission" by the end of 2016 and early 2017 (PageID.2387). (PageID.42-43.) Indeed, those findings were taken directly from her treating physicians' medical records. (*See* PageID.2078, 2387.) Likewise, there is substantial evidence supporting the ALJ's analysis of Plaintiff's mental impairment of anxiety and depression and Ms. Lawrence's opinion. (*See* PageID.43, 45-46.)

On the record before the Court, I cannot find that there was not substantial evidence to support the ALJ's determination.

### 3. Plaintiff's Smoking

Plaintiff also argues that the ALJ erred in concluding that Plaintiff was not following medical advice by continuing to smoke, arguing that the addictive nature of cigarettes made that not a free-will decision. (PageID.2446.) Plaintiff also notes that Social Security Regulation 18-3p specifically states that a failure to stop smoking is not a failure to follow medical treatment.

13

(*Id.*)  That regulation went into effect after the ALJ made his decision in this case and would not apply retroactively.  Moreover, it only applies where the ALJ finds that the claimant would be otherwise entitled to disability benefits, which is not the case here.  SSR 18-3p (S.S.A.), 2018 WL 4945641 (October 2, 2018), at *2-3.

Notably, though, while the ALJ stated that Plaintiff had continued smoking against medical evidence, he considered it only as one part of the medical record.  In at least one other case, this Court has held that it was appropriate to consider failure to stop smoking as further evidence that the claimant's maladies were less serious than she maintained.  *See, e.g., Hilts v. Comm'r of Soc. Sec.*, No. 1:16-CV-313, 2017 WL 127510, at *6 (W.D. Mich. Jan. 13, 2017); *see also Garcia v. Comm'r of Soc. Sec.*, No. 1:13-CV-501, 2015 WL 869191, at *11 (W.D. Mich. Feb. 27, 2015) (considering failure to lose weight against medical evidence as undercutting claimant's allegations regarding severity of symptoms).

The Court need not decide whether it was error to consider her failure to cease her pack a day smoking habit because, even without that discussion, there is substantial evidence to support the ALJ's decision.  *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.  A judgment consistent with this opinion will enter.

Dated: April 14, 2020                /s/ Sally J. Berens
                                     SALLY J. BERENS
                                     U.S. Magistrate Judge